

March 8, 2022

**VIA EMAIL AND FEDERAL EXPRESS**

Peter W. Kuyper, Manager
Hawks Hill Ranch, LLC
7815 Adelaida Road
Paso Robles, CA 93446-9772

Peter W. Kuyper, Manager
Hawks Hill Ranch, LLC
101 Castle Rock Road
Cody, WY 82414

Thomas C. Kuyper, Manager
Hawks Hill Ranch Winery, LLC
8225 Adelaida Road
Paso Robles, CA 93446
<info@hhrwinery.com>

Simon W. Hackett, CEO
Brecon Estate, Inc.
7540 Vineyard Drive
Paso Robles, CA 93446

Paloma Bilson, CEO
Happy Bird, dba Dilecta
3092 Anderson Road
Paso Robles, CA 93446
<info@dilectawines.com>

    Re:    **Infringement of HAWK HILL VINEYARD® Trademarks and Trade Name U.S. Registration Nos. 2,465,356 and 3,381,147**

Dear Sir/Madam:

This firm represents William and Margaret Yarak, the owners of Hawk Hill Vineyard in Sonoma County, California (the "Yaraks"). The Yaraks are the owners of the registered and incontestable trademark HAWK HILL VINEYARD® (U.S. Reg. No. 3,381,147) for "Wines" in Class 33, as well as the registered and incontestable U.S. service mark HAWK HILL VINEYARD® (U.S. Reg. No. 2,465,356) for "Viticultural services, namely, cultivation of grapes to the order and specification of others" in Class 42 (collectively, the "HAWK HILL Marks"). The Yaraks are also the owners of the www.hawkhillvineyard.com domain name and website.

**PLEASE BE ADVISED that you are hereby put on notice of (1) your infringement of our clients' HAWK HILL Marks in violation of applicable federal and state law due to your use of confusingly similar marks for wine and related services, (2) your liability for the damages and costs incurred by our clients as a result thereof in an amount to be determined at trial, but in all events no less than $100,000.00, and (3) our demand for written confirmation that you will agree to immediately and forever abandon all use of HAWKS HILL, HAWKS HILL RANCH and/or any similar names for wines, vineyards, and related services. Please direct all future correspondence regarding this matter to my attention.**





March 8, 2022
Page 2

The Yaraks (together with their predecessors-in-title) have continuously used the HAWK HILL VINEYARD service mark since at least as early as May 1993. The Yaraks and their licensees (together with their predecessors-in-title) have continuously used the HAWK HILL VINEYARD trademark on wines since at least as early as December 2001. The U.S. Patent and Trademark Office ("USPTO") registrations for the above-referenced marks provide constructive notice throughout the U.S. of our clients' prior use and rights in the HAWK HILL Marks. Furthermore, the Yaraks have invested substantial sums into developing the HAWK HILL Marks and in maintaining the preeminent reputation of these brands in the marketplace for use on ultra-premium wines made only from cool climate Pinot Noir and Chardonnay grapes grown on their 25 acre vineyard in the far western hills of Sonoma County. Each year, our clients are careful to sell their grapes and license the use of the HAWK HILL VINEYARD wine mark to a handful of wineries with decades of success in the marketplace and a track record of receiving high scores from leading wine publications. These include, among others,

| Winery | Vintage | Publication | Score |
| --- | --- | --- | --- |
| Lynmar | 2017 | Wine Enthusiast | 98 |
| Anthill Farms | 2018 | Robert Parker's WA | 95 |
| Freeman | 2018 | Vinous/Galloni | 94 |
| DeLoach | 2013 | Wine Enthusiast | 94 |
| Red Car | 2014 | Vinous/Galloni | 92 |
| Williams-Selyem | 2011 | Tanzer | 92 |
| Joseph Swan | 2012 | Tanzer | 90 |

As evidenced by the exceptional reviews and ratings for wines bearing the HAWK HILL VINEYARD Mark from Robert Parker's Wine Advocate, Vinous, and other leading publications, the HAWK HILL VINEYARD Mark for wine has become a particularly valuable asset of the Yaraks' business. Likewise, the registered HAWK HILL VINEYARD mark for "viticultural services [in the] cultivation of grapes to the order and specification of others" is a valued asset of my clients, whose renown for farming and selling wine grapes to a select group of fortunate wineries keeps prospective grape buyers knocking on their door.

### *History of Infringement – Hawks Hill, Ranch, LLC and Peter Kuyper*

In October 2012, Hawks Hill Ranch, LLC (owned by Peter Kuyper) filed an application with the USPTO to register the design-plus-words mark HH HAWKS HILL RANCH for "Vineyard and winery services, namely, the cultivation of grapes for others." In a USPTO Office Action dated March 1, 2013, the USPTO notified Hawks Hill Ranch, LLC that it was refusing to approve the HH HAWKS HILL RANCH mark for registration due to a,



March 8, 2022
Page 3

> "likelihood of confusion with the marks in U.S. Registration No. 2465356 and 3381147 [the Yaraks' HAWK HILL Marks] …. Trademark Act Section 2(d) bars registration of an applied-for mark that so resembles a registered mark that it is likely that a potential consumer would be confused or mistaken or deceived as to the source of the services of the applicant and registrant. …
>
> In the instant case, applicant's mark is "HH Hawks Hill Ranch" with design and the registrant's marks are "Hawk Hill Vineyard" with "Vineyard" disclaimed. Although marks are compared in their entireties, one feature of a mark may be more significant or dominant in creating a commercial impression… Disclaimed matter is typically less significant or less dominant when comparing marks. … As such, the dominant feature of both parties' marks is "Hawk/Hawks Hill" [and] "the marks are so similar in their appearance, sound, connotation and commercial impression, that there is a likelihood of confusion."

See USPTO Office Action, dated March 1, 2013 (the first 10 pages of which are attached hereto).

In response, between August 2013 and April 2014, Hawks Hill Ranch, LLC submitted three filings to the USPTO that argued there was no likelihood of confusion between its HH HAWKS HILL RANCH mark and the HAWK HILL Marks. The USPTO rejected these arguments and maintained its refusal of the HH HAWKS HILL RANCH mark due to similarity with the HAWK HILL Marks.

In March 2014, Peter Kuyper sent a letter to the Yaraks' predecessors-in-title requesting their consent to the registration and use of the HH HAWKS HILL RANCH mark. On or around April 21, 2014 and June 20, 2014, reply letters were sent to Peter Kuyper by our clients (who had previously taken ownership of the HAWK HILL Marks and vineyard), denying his requested consent to coexistence, putting him and his company on notice of their infringement of the HAWK HILL Marks, and imploring them to cease and desist such infringement. On or around April 6, 2015, this firm sent a follow-up cease and desist letter to Peter Kuyper and his company to reiterate that any use of HAWKS HILL RANCH as a trademark in connection with vineyards, grapes, and/or viticultural services would constitute infringement of our clients' HAWK HILL Marks. Thereafter, the HH HAWKS HILL RANCH trademark application was abandoned, there were no uses on or in connection with wine or vineyard services that our clients could find, and thus our clients reasonably believed that their infringement concerns had been resolved.

It recently came to our clients' attention that Peter Kuyper and Hawks Hill Ranch, LLC have resumed their use of the mark HH HAWKS HILL RANCH and HAWKS HILL RANCH in connection with vineyard services, the cultivation and sale of grapes to third parties, and wine. Your use of a highly similar name to our clients' HAWK HILL Mark for related goods and services, after having been notified of our clients' registered trademarks and the likely confusion presented by use of HH HAWKS HILL RANCH, constitutes a brazen, intentional infringement of the Yaraks' HAWK HILL Marks and trade name.



March 8, 2022
Page 4

Unfortunately, we are aware of recent instances of actual confusion in the marketplace caused by the above-described uses, including confusion by a member of the wine trade as to our clients' affiliation with Hawks Hill Ranch, LLC and Peter Kuyper. In one case, Mr. Yarak was attending the Unified Wine and Grape Symposium in Sacramento, where he was mistaken as being the owner of "Hawks Hill Ranch" by a wine label supplier while wearing a name tag that identified him as the owner of "Hawk Hill Vineyard." This incident demonstrates that Peter Kuyper's and Hawks Hill Ranch, LLC's past, current and any future unauthorized use and display of HAWKS HILL RANCH or any other use of HAWKS HILL in connection with the marketing of your grapes, vineyard services, and/or wine products is currently causing confusion, and is likely to cause confusion and mistake in the future that your goods and services originate from, are sponsored by, or are otherwise authorized by our clients. These usages, intentionally or otherwise, trade upon our clients' established goodwill, constitute actionable trademark infringement, and bad-faith misappropriation of the Yaraks' labors and expenditures, and dilute the uniqueness of their popular and successful HAWK HILL VINEYARD trademark and service mark in violation of 15 U.S.C. § 1114, 15 U.S.C. § 1125(a) and (c), and Cal. Bus. and Prof. Code § 17200. These actions also constitute trademark infringement and unfair competition under the common law of the State of California. The remedies under these laws are substantial, and include preliminary and permanent injunctive relief, money damages, and where intentional infringement is shown (as would be the case here), recovery of attorneys' fees and treble damages.

To make matters worse, as set forth more fully below, we recently learned that Peter Kuyper (in his individual capacity) gave permission to a number of wineries to use the names "HAWKS HILL RANCH" or "HAWKS HILL" as vineyard designations for the wines made from grapes sold by Hawks Hill Ranch, LLC. The fact that Peter Kuyper would do this while on notice of the Yaraks' pre-existing registered HAWK HILL Marks and associated rights constitutes a separate and particularly outrageous act of trademark infringement, for which Peter Kuyper may be held personally liable under theories of contributory and/or vicarious liability. It also gives rise to claims for unfair competition, wrongful business practices, and provides the requisite grounds for a finding of "exceptional" circumstances for recovery of attorneys' fees under 15 U.S.C. § 1117(a).

*History of Infringement – Hawks Hill Ranch Winery, LLC and Kit Kuyper*

We recently learned that Thomas Christopher "Kit" Kuyper (Peter Kuyper's son) established Hawks Hill Ranch Winery, LLC in September 2019 to produce and sell wines under the trademark and trade name HAWKS HILL RANCH, including wines made from grapes grown in the vineyard owned by Hawks Hill Ranch, LLC. The winery's website is currently selling multiple wines marketed under the brand name and/or single-vineyard designation "Hawks Hill Ranch," including a 2018 Grenache-Syrah blend featuring "HAWKS HILL RANCH" in large font on the front label:



March 8, 2022
Page 5





The TTB COLAs for that wine list the brand name as "HAWKS HILL RANCH" and the fanciful name as "LIQUIDITY." There can be little doubt that the prominent display of the infringing "HAWKS HILL RANCH" name on the consumer front label (in a font that is 2.5 times larger than the font used for "LIQUIDITY"), as well as use of the domain name hawkshillranch.com on the consumer back label for current and prior vintages, demonstrate trademark uses that constitute infringements of our clients' registered HAWK HILL Marks.

### History of Infringement – Brecon Estate, Inc.

A number of the wines sold under the infringing brand name and/or single-vineyard designation HAWKS HILL RANCH, including the 2016 HAWKS HILL RANCH LIQUIDITY, were bottled and labeled by Brecon Estate, Inc. ("Brecon"). The below images were taken from the TTB COLA that Brecon filed for the aforementioned 2016 wine. As the bottling and labeling winery, Brecon may also be held liable for infringement of our clients' registered trademarks under theories of vicarious/contributory trademark infringement.




### History of Infringement – Happy Bird, dba Dilecta

Happy Bird, dba Dilecta ("Dilecta") is another winery we recently discovered has been selling wines named "HAWKS HILL" made from Syrah grapes grown on the vineyard owned by Hawks Hill Ranch, LLC.  For the Dilecta 2018 HAWKS HILL sku, the Dilecta website refers to the source of the grapes as "Hawks Hill Vineyard" (which is arguably an even more egregious



March 8, 2022
Page 6

infringement given that this is legally identical to our clients' registered HAWK HILL VINEYARD wine trademark):



The TTB COLA shows "HAWKS HILL" prominently displayed on the consumer back label:



We have little doubt that Peter Kuyper permitted Dilecta (including its predecessors Dilecta, Inc., Steve Sellers, et al.) to use the "HAWKS HILL" name as a vineyard designation on their bottlings. Dilecta's use of the infringing name "HAWKS HILL" for this and other skus, and on its website ordering page, constitute additional infringements and violations of the Yaraks' rights in their HAWK HILL Marks for which Dilecta may now be held liable under applicable law.



March 8, 2022
Page 7

Despite these extensive and ongoing infringements, our clients are pragmatic and see mutual benefits in a swift resolution of this matter. Accordingly, they have authorized me to propose a complete and binding settlement and irrevocable waiver of any and all claims against all of the above-named putative defendants in exchange for:

- a one-time payment of $100,000.00, which our clients intend to use for advertising to promote consumers' and trade members' recognition and association of the name HAWK HILL with our clients' HAWK HILL VINEYARD brands, their vineyard services, and the wines made therefrom, to remedy the confusion and damage to the goodwill that should inhere in our clients' marks caused by your infringing conduct;

- written confirmation of complete removal and/or expungement of all use and display of HAWKS HILL and/or HAWKS HILL RANCH (and associated wines and photos thereof) from your respective websites, social media pages, property signage, etc.;

- written agreement that you have abandoned and shall not resume sales, distribution, marketing, and/or production of wines displaying HAWKS HILL, HAWKS HILL RANCH, or any other term that is confusingly similar to HAWK HILL VINEYARD on labels, bottles, or otherwise in connection with the marketing or sale thereof;

- written agreement to forever abandon and not resume use of HAWKS HILL and/or HAWKS HILL RANCH and/or any similar names for or in connection with vineyards, grapes, related services, and/or as a trade name;

- transfer of the hawkshillranch.com domain name to the Yaraks; with

- **all of the above to be received by the Yaraks no later than COB March 17, 2022.**

Please be advised that in the event that we cannot reach agreement on these terms and/or full compliance therewith by March 17, 2022, we will immediately commence litigation and issue appropriate press releases to industry publications (among others) regarding the nature and extent of your violations of state and federal law. Please be further advised that this letter is sent without waiver of any and all of our clients' rights at law or in equity, all of which are expressly reserved.

Very truly yours,

John B. Dawson

cc: Client

Attachment

| | |
|---|---|
| To: | Hawks Hill Ranch, LLC (jmaresca@mplc.com) |
| Subject: | U.S. TRADEMARK APPLICATION NO. 85762465 - HH HAWKS HILL RANCH - N/A |
| Sent: | 3/1/2013 3:40:23 PM |
| Sent As: | ECOM116@USPTO.GOV |
| Attachments: | Attachment - 1 |
| | Attachment - 2 |
| | Attachment - 3 |
| | Attachment - 4 |
| | Attachment - 5 |
| | Attachment - 6 |
| | Attachment - 7 |
| | Attachment - 8 |
| | Attachment - 9 |
| | Attachment - 10 |
| | Attachment - 11 |
| | Attachment - 12 |
| | Attachment - 13 |
| | Attachment - 14 |
| | Attachment - 15 |
| | Attachment - 16 |
| | Attachment - 17 |
| | Attachment - 18 |
| | Attachment - 19 |
| | Attachment - 20 |
| | Attachment - 21 |
| | Attachment - 22 |
| | Attachment - 23 |
| | Attachment - 24 |
| | Attachment - 25 |
| | Attachment - 26 |
| | Attachment - 27 |
| | Attachment - 28 |
| | Attachment - 29 |

**UNITED STATES PATENT AND TRADEMARK OFFICE (USPTO)**
**OFFICE ACTION (OFFICIAL LETTER) ABOUT APPLICANT'S TRADEMARK APPLICATION**

**U.S. APPLICATION SERIAL NO.**   85762465

**MARK:** HH HAWKS HILL RANCH

*85762465*

**CORRESPONDENT ADDRESS:**
   JULIE S. MARESCA
   5455 S CENTINELA AVE FL 3
   LOS ANGELES, CA 90066-6942

**CLICK HERE TO RESPOND TO THIS LETTER:**
http://www.uspto.gov/trademarks/teas/response_forms.jsp

**APPLICANT:** Hawks Hill Ranch, LLC

**CORRESPONDENT'S REFERENCE/DOCKET NO:**
N/A
**CORRESPONDENT E-MAIL ADDRESS:**
jmaresca@mplc.com

# OFFICE ACTION

## STRICT DEADLINE TO RESPOND TO THIS LETTER

TO AVOID ABANDONMENT OF APPLICANT'S TRADEMARK APPLICATION, THE USPTO MUST RECEIVE APPLICANT'S COMPLETE RESPONSE TO THIS LETTER **WITHIN 6 MONTHS** OF THE ISSUE/MAILING DATE BELOW.

**ISSUE/MAILING DATE: 3/1/2013**

The referenced application has been reviewed by the assigned trademark examining attorney. Applicant must respond timely and completely to the issues below. 15 U.S.C. §1062(b); 37 C.F.R. §§2.62(a), 2.65(a); TMEP §§711, 718.03.

## SECTION 2(d) REFUSALS – LIKELIHOOD OF CONFUSION

Registration of the applied-for mark is refused because of a likelihood of confusion with the marks in *U.S. Registration No. 2465356 and 3381147*. Trademark Act Section 2(d), 15 U.S.C. §1052(d); *see* TMEP §§1207.01 *et seq.* See the enclosed registrations.

Trademark Act Section 2(d) bars registration of an applied-for mark that so resembles a registered mark that it is likely that a potential consumer would be confused or mistaken or deceived as to the source of the services of the applicant and registrant. *See* 15 U.S.C. §1052(d). The court in *In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 177 USPQ 563 (C.C.P.A. 1973) listed the principal factors to be considered when determining whether there is a likelihood of confusion under Section 2(d). *See* TMEP §1207.01. However, not all of the factors are necessarily relevant or of equal weight, and any one factor may be dominant in a given case, depending upon the evidence of record. *In re Majestic Distilling Co.*, 315 F.3d 1311, 1315, 65 USPQ2d 1201, 1204 (Fed. Cir. 2003); *see In re E. I. du Pont*, 476 F.2d at 1361-62, 177 USPQ at 567.

The following factors are the most relevant: similarity of the marks, similarity of the services, and similarity of trade channels of the services. *See In re Opus One, Inc.*, 60 USPQ2d 1812 (TTAB 2001); *In re Dakin's Miniatures Inc.*, 59 USPQ2d 1593 (TTAB 1999); *In re Azteca Rest. Enters., Inc.*, 50 USPQ2d 1209 (TTAB 1999); TMEP §§1207.01 *et seq.*

### Comparison of the Marks

Marks are compared in their entireties for similarities in appearance, sound, connotation, and commercial impression. *In re Viterra Inc.*, 671 F.3d 1358, 1362, 101 USPQ2d 1905, 1908 (Fed. Cir. 2012) (quoting *In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 1361, 177 USPQ 563, 567 (C.C.P.A. 1973)); TMEP §1207.01(b)-(b)(v). Similarity in any one of these elements may be sufficient to find the marks confusingly similar. *In re White Swan Ltd.*, 8 USPQ2d 1534, 1535 (TTAB 1988); *see In re 1st USA Realty Prof'ls , Inc.*, 84 USPQ2d 1581, 1586 (TTAB 2007); TMEP §1207.01(b).

For a composite mark containing both words and a design, the word portion may be more likely to be impressed upon a purchaser's memory and to be used when requesting the goods and/or services. *In re Dakin's Miniatures, Inc.*, 59 USPQ2d 1593, 1596 (TTAB 1999); TMEP §1207.01(c)(ii); *see In re Viterra Inc.*, 671 F.3d 1358, 1362, 101 USPQ2d 1905, 1908, 1911 (Fed. Cir. 2012) (citing *CBS Inc. v. Morrow*, 708 F. 2d 1579, 1581-82, 218 USPQ 198, 200 (Fed. Cir 1983)). Thus, although such marks must be compared in their entireties, the word portion is often considered the dominant feature and is accorded greater weight in determining whether marks are confusingly similar, even where the word portion has been disclaimed. *In re Viterra Inc.*, 671 F.3d at 1366, 101 USPQ2d at 1911 (Fed. Cir. 2012) (citing *Giant Food, Inc. v. Nation's Foodservice, Inc.*, 710 F.2d 1565, 1570-71, 218 USPQ2d 390, 395 (Fed. Cir. 1983)).

In the instant case, applicant's mark is " **HH Hawks Hill Ranch**" with design and the registrant's marks are " **Hawk Hill Vineyard**" with "Vineyard" disclaimed. Although marks are compared in their entireties, one feature of a mark may be more significant or dominant in creating a commercial impression. *See In re Viterra Inc.*, 671 F.3d 1358, 1362, 101 USPQ2d 1905, 1908 (Fed. Cir. 2012); *In re Nat'l Data Corp.*, 753 F.2d 1056, 1058, 224 USPQ 749, 751 (Fed. Cir. 1985); TMEP §1207.01(b)(viii), (c)(ii). Disclaimed matter is typically less significant or less dominant when comparing marks. *See In re Dixie Rests., Inc.*, 105 F.3d 1405, 1407, 41 USPQ2d 1531, 1533-34 (Fed. Cir. 1997); *In re Nat'l Data Corp.*, 753 F.2d 1056, 1060, 224 USPQ 749, 752 (Fed. Cir. 1985); TMEP §1207.01(b)(viii), (c)(ii). As such, the dominant feature of both parties' marks is "Hawk/Hawks Hill".

Indeed, the only difference between the dominant features is that applicant's term contains an "S" at the end of "Hawk". However, service

marks consisting of the singular and plural forms of the same term are essentially the same mark. *See Wilson v. Delaunay*, 245 F.2d 877, 878, 114 USPQ 339, 341 (C.C.P.A. 1957) (finding no material difference between the singular and plural forms of ZOMBIE such that the marks were considered the same mark); *In re Pix of Am., Inc.*, 225 USPQ 691, 692 (TTAB 1985) (noting that the pluralization of NEWPORT is "almost totally insignificant" in terms of likelihood of confusion among purchasers); *In re Sarjanian*, 136 USPQ 307, 308 (TTAB 1962) (finding no material difference between the singular and plural forms of RED DEVIL).

Thus, the marks are so similar in their appearance, sound, connotation and commercial impression, that there is a likelihood of confusion. Therefore, the similarity prong of the test to determine likelihood of confusion is satisfied.

### Comparison of the Goods and Services

The goods and services of the parties need not be identical or directly competitive to find a likelihood of confusion. *See Safety-Kleen Corp. v. Dresser Indus., Inc.*, 518 F.2d 1399, 1404, 186 USPQ 476, 480 (C.C.P.A. 1975); TMEP §1207.01(a)(i). Rather, they need only be related in some manner, or the conditions surrounding their marketing are such that they would be encountered by the same purchasers under circumstances that would give rise to the mistaken belief that the goods and services come from a common source. *In re Total Quality Group, Inc.*, 51 USPQ2d 1474, 1476 (TTAB 1999); TMEP §1207.01(a)(i); *see, e.g., On-line Careline Inc. v. Am. Online Inc.*, 229 F.3d 1080, 1086-87, 56 USPQ2d 1471, 1475-76 (Fed. Cir. 2000); *In re Martin's Famous Pastry Shoppe, Inc.*, 748 F.2d 1565, 1566-68, 223 USPQ 1289, 1290 (Fed. Cir. 1984).

Based on the aforementioned standard, the applicant's services are closely related to the registrant's goods and services because they could be marketed and sold together and/or in the same channels of trade. Specifically, the applicant's services are for "Vineyard and winery services, namely, the cultivation of grapes for others".

The registrant's services for Us Reg '356 are for " Viticultural services, namely, cultivation of grapes to the order and specification of others"; and US Reg '147 are for "wines".

As such, applicant's and registrant's services are essentially identical as they both provide cultivation of grapes services, and the goods and services are closely related.

Please see attached evidence which illustrates that vineyard and winery services and wines often emanate from the same source. Specifically, vineyards such as Nord, Hook & Ladder, Fox and Coppola provide vineyard services and featured house wines.

Accordingly, because confusion as to source is likely, registration is refused under Trademark Act Section 2(d) based on a likelihood of confusion.

Although applicant's mark has been refused registration, applicant may respond to the refusals by submitting evidence and arguments in support of registration.

Applicant must respond to the requirement set forth below.

### Disclaimer Required

Applicant must disclaim the descriptive wording "RANCH" apart from the mark as shown because it merely describes the source of applicant's services. *See* 15 U.S.C. §§1052(e)(1), 1056(a); *In re Steelbuilding.com*, 415 F.3d 1293, 1297, 75 USPQ2d 1420, 1421 (Fed. Cir. 2005); *In re Gyulay*, 820 F.2d 1216, 1217-18, 3 USPQ2d 1009, 1010 (Fed. Cir. 1987); TMEP §§1213, 1213.03(a).

Specifically, the attached evidence from Dictionary.com shows this wording refers to "a large farm used primarily to raise one kind of crop or animal". Therefore, the wording merely describes the source of applicant's services. That is, applicant comprises a ranch on which grapes are cultivated.

The Office can require an applicant to disclaim an unregistrable part of a mark consisting of particular wording, symbols, numbers, design elements or combinations thereof. 15 U.S.C. §1056(a). Under Trademark Act Section 2(e), the Office can refuse registration of an entire mark if the entire mark is merely descriptive, deceptively misdescriptive, or primarily geographically descriptive of the goods or services. 15 U.S.C. §1052(e). Thus, the Office may require an applicant to disclaim a portion of a mark that, when used in connection with the goods or services, is merely descriptive, deceptively misdescriptive, primarily geographically descriptive, or otherwise unregistrable (e.g., generic). *See* TMEP §§1213, 1213.03.

Failure to comply with a disclaimer requirement can result in a refusal to register the entire mark. TMEP §1213.01(b).

A "disclaimer" is a statement that applicant does not claim exclusive rights to an unregistrable component of a mark. TMEP §1213. A

disclaimer does not affect the appearance of the applied-for mark. *See* TMEP §1213.10.

The following is the standard format used by the Office:

> **No claim is made to the exclusive right to use "RANCH" apart from the mark as shown.**

TMEP §1213.08(a)(i); *see In re Owatonna Tool Co.*, 231 USPQ 493 (Comm'r Pats. 1983).

**Conclusion**

If applicant has questions about its application or needs assistance in responding to this Office action, please telephone the assigned trademark examining attorney.

**TEAS PLUS APPLICANTS MUST SUBMIT DOCUMENTS ELECTRONICALLY OR SUBMIT FEE:** Applicants who filed their application online using the reduced-fee TEAS Plus application must continue to submit certain documents online using TEAS, including responses to Office actions. *See* 37 C.F.R. §2.23(a)(1). For a complete list of these documents, see TMEP §819.02(b). In addition, such applicants must accept correspondence from the Office via e-mail throughout the examination process and must maintain a valid e-mail address. 37 C.F.R. §2.23(a)(2); TMEP §§819, 819.02(a). TEAS Plus applicants who do not meet these requirements must submit an additional fee of $50 per international class of goods and/or services. 37 C.F.R. §2.6(a)(1)(iv); TMEP §819.04. In appropriate situations and where all issues can be resolved by amendment, responding by telephone to authorize an examiner's amendment will not incur this additional fee.

/tfrazier/
Tamara Frazier
Trademark Attorney
Law Office 116
(571) 272-8256
tamara.frazier@uspto.gov

**TO RESPOND TO THIS LETTER:** Go to http://www.uspto.gov/trademarks/teas/response_forms.jsp. Please wait 48-72 hours from the issue/mailing date before using the Trademark Electronic Application System (TEAS), to allow for necessary system updates of the application. For *technical* assistance with online forms, e-mail TEAS@uspto.gov. For questions about the Office action itself, please contact the assigned trademark examining attorney. **E-mail communications will not be accepted as responses to Office actions; therefore, do not respond to this Office action by e-mail.**

**All informal e-mail communications relevant to this application will be placed in the official application record.**

**WHO MUST SIGN THE RESPONSE:** It must be personally signed by an individual applicant or someone with legal authority to bind an applicant (i.e., a corporate officer, a general partner, all joint applicants). If an applicant is represented by an attorney, the attorney must sign the response.

**PERIODICALLY CHECK THE STATUS OF THE APPLICATION:** To ensure that applicant does not miss crucial deadlines or official notices, check the status of the application every three to four months using the Trademark Status and Document Retrieval (TSDR) system at http://tsdr.uspto.gov/. Please keep a copy of the TSDR status screen. If the status shows no change for more than six months, contact the Trademark Assistance Center by e-mail at TrademarkAssistanceCenter@uspto.gov or call 1-800-786-9199. For more information on checking status, see http://www.uspto.gov/trademarks/process/status/.

**TO UPDATE CORRESPONDENCE/E-MAIL ADDRESS:** Use the TEAS form at http://www.uspto.gov/trademarks/teas/correspondence.jsp.

Print: Feb 25, 2013                    75896105

## DESIGN MARK

**Serial Number**
75896105

**Status**
REGISTERED AND RENEWED

**Word Mark**
HAWK HILL VINEYARD

**Standard Character Mark**
No

**Registration Number**
2465356

**Date Registered**
2001/07/03

**Type of Mark**
SERVICE MARK

**Register**
PRINCIPAL

**Mark Drawing Code**
(1) TYPED DRAWING

**Owner**
Michalczyk, Vicki V. INDIVIDUAL UNITED STATES 201 Jonive Road Sebastopol CALIFORNIA 95472

**Owner**
Michalczyk, Paul A. INDIVIDUAL UNITED STATES 201 Jonive Road Sebastopol CALIFORNIA 95472

**Goods/Services**
Class Status -- ACTIVE. IC 042. US 100 101. G & S: Viticultural services, namely, cultivation of grapes to the order and specification of others. First Use: 1993/05/00. First Use In Commerce: 1993/05/00.

**Disclaimer Statement**
NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "VINEYARD" APART FROM THE MARK AS SHOWN.

**Filing Date**
2000/01/13

**Examining Attorney**
JENKINS, CHARLES L.

**Attorney of Record**
Jay M. Behmke

# HAWK HILL VINEYARD

Print: Feb 27, 2013                    77205644

## DESIGN MARK

**Serial Number**
77205644

**Status**
REGISTERED

**Word Mark**
HAWK HILL VINEYARD

**Standard Character Mark**
Yes

**Registration Number**
3381147

**Date Registered**
2008/02/12

**Type of Mark**
TRADEMARK

**Register**
PRINCIPAL

**Mark Drawing Code**
(4) STANDARD CHARACTER MARK

**Owner**
Michalczyk, Vicki V. INDIVIDUAL UNITED STATES 201 Jonive Road Sebastopol CALIFORNIA 95472

**Owner**
Michalczyk, Paul A. INDIVIDUAL UNITED STATES 201 Jonive Road Sebastopol CALIFORNIA 95472

**Goods/Services**
Class Status -- ACTIVE.  IC 033.  US  047 049.  G & S: Wines.  First Use: 2001/12/31.  First Use In Commerce: 2001/12/31.

**Prior Registration(s)**
2465356

**Disclaimer Statement**
NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "VINEYARD" APART FROM THE MARK AS SHOWN.

**Filing Date**
2007/06/13

-1-

Print: Feb 27, 2013                    77205644

**Examining Attorney**
HETZEL, DANNEAN

**Attorney of Record**
Jay M. Behmke

-2-

# HAWK HILL VINEYARD